UNITED STATES of America,
Plaintiff-Appellee,

v.

Andrew FORD, Sr., Defendant-Appellant.

Nos. 79–2039, 79–2280.

United States Court of Appeals,
Seventh Circuit.

Argued June 2, 1980.

Decided Aug. 4, 1980.

Steven P. Kennedy, Munster, Ind., for defendant-appellant.

Richard A. Hanning, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and CUDAHY, Circuit Judges.

SWYGERT, Circuit Judge.

The defendant-appellant, Andrew Ford, Sr., appeals from a modified judgment of conviction which reduced his three concurrent sentences of imprisonment from nine to four years.[1] These sentences were imposed upon his conviction by a plea of guilty to three counts of arson in violation of District of Columbia Code § 22–401 under which the maximum penalty is ten years imprisonment and the minimum penalty is one year imprisonment. Ford does not contest his guilty plea. He challenges only the length of the sentence. Upon finding that we have, and that the district court had, jurisdiction, we affirm.

I

On May 24, 1978, Ford was indicted in the Superior Court of the District of Columbia. The twenty-one count indictment charged him with burglary, arson, and destruction of property in violation of the District of Columbia Code. After Ford failed to appear for his arraignment, a bench warrant for his arrest was issued by the Superior Court.

On February 1, 1979, Ford was arrested in Hammond, Indiana by Special Agents of the Federal Bureau of Investigation. The case was transferred to the Northern District of Indiana pursuant to Fed.R.Crim.P. 20.[2] On March 29, according to the Rule 20 agreement, Ford plead guilty to three arson counts in return for the dismissal of the remaining eighteen counts.

On May 10, Ford was sentenced to three concurrent adult sentences of nine years imprisonment "subject to revision." During the sentencing proceedings, the court announced that it would review Ford's sentence within 120 days. To facilitate the review, it ordered complete physical, neurological, and psychiatric examinations of Ford. The court also directed Ford's attorney to investigate whether Ford could be given a Young Adult Offender (Y.C.A.) sentence pursuant to 18 U.S.C. § 4216 in light of the fact that he was then twenty-five years old.

On August 9, on the court's own motion, the judgment of conviction was modified and Ford's sentence reduced from nine to four years. At the resentencing proceedings, the court was informed that the Y.C.A. provision was not applicable where, as here, the crimes charged violated only the District of Columbia Code. See P.L. 85–752 § 6, 72 Stat. 847 (1958), amended, P.L. 86–70 § 17, 73 Stat. 144 (1959); P.L. 86–624 § 13, 74 Stat. 413 (1960); see also P.L. 94–233 § 3, 90 Stat. 219, 230 (1976) (18 U.S.C. § 4216); United States v. McDonald,

---

1. In No. 79–2280 Ford appeals from an order denying his motion for release pending appeal. This court has denied that relief as well. With our decision of this case, the appeal from the denial of release becomes moot. Therefore, it is dismissed on that ground.

2. In pertinent part, Rule 20 provides as follows:

   A defendant arrested, held, or present in a district other than that in which an indictment or information is pending against him may state in writing that he wishes to plead guilty or nolo contendere, to waive trial in the district in which the indictment or information is pending, and to consent to disposi-

tion of the case in the district in which he was arrested, held, or present, subject to the approval of the United States attorney for each district. Upon receipt of the defendant's statement and of the written approval of the United States attorneys, the clerk of the court in which the indictment or information is pending shall transmit the papers in the proceeding or certified copies thereof to the clerk of the court for the district in which the defendant is arrested, held, or present, and the prosecution shall continue in that district.

Fed.R.Crim.P. 20(a).

481 F.2d 513, 515–18 (D.C.Cir.1973) (upholding applicability provision). Upon the court's request, the probation officer assigned to Ford's case, Joseph Johnson, stated that the Parole Commission's guidelines for a Y.C.A. sentence were sixty to seventy-six months, of which Ford would serve approximately three years in prison. The court stated that by imposing a four-year adult sentence it intended that Ford be incarcerated approximately as long as he would have been under a Y.C.A. sentence. It is from his second sentence that Ford appeals.

## II

Before considering the merits of Ford's appeal, we address two jurisdictional problems: (1) whether Ford's failure to file a timely notice of appeal deprives this court of jurisdiction; and (2) whether the transfer of this case from the Superior Court of the District of Columbia was authorized. The former issue is raised by the Government; the latter we raise *sua sponte.*

## A.

Regarding the timeliness of Ford's notice of appeal, the facts may be summarized as follows: Final judgment was entered on August 9, 1979, the date upon which Ford was sentenced for the second time.[3] Afterward, Ford was taken to the Metropolitan Correctional Center in Chicago, Illinois. While incarcerated Ford prepared a *pro se* notice of appeal dated August 16. He alleges that it was tendered to prison authorities on that date. Although it need not have been, *see* Fed.R.App.P. 3(c), the notice of appeal was "notarized" by a parole officer acting pursuant to 18 U.S.C. § 4004, but not until August 20. It was not received and filed by the district court until

August 29. The ten-day period for timely filing of the notice of appeal expired on August 20. *See* Fed.R.App.P. 4(b), 26(a). Thus, Ford's notice of appeal was untimely.

The Government asserts that because a timely notice of appeal is "mandatory" and "jurisdictional," *see Temple v. United States,* 386 U.S. 961, 87 S.Ct. 1024, 18 L.Ed.2d 110 (1967); *Berman v. United States,* 378 U.S. 530, 84 S.Ct. 1895, 12 L.Ed.2d 1012 (1964); *United States v. Robinson,* 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960); *United States v. Tallman,* 437 F.2d 1103 (7th Cir. 1971), this appeal must be dismissed. Ford relies primarily upon *Fallen v. United States,* 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964).

The Government's position imputes to the appellate rules a draconian rigidity which the Supreme Court eschewed in *Fallen.* 378 U.S. at 142, 84 S.Ct. at 1691. As Professor Moore notes, a timely notice of appeal is not "jurisdictional" in the sense of subject matter jurisdiction. 9 Moore's Federal Practice ¶ 204.02[2]. Of course, the appellate rules must be complied with, but the extent to which there has been substantial compliance, and to which that will suffice, are primarily matters of sound judicial discretion. *See, e. g., United States v. Solly,* 545 F.2d 874 (3d Cir. 1976) (notice of appeal deemed "filed" on date received by district court); *United States v. Grimes,* 426 F.2d 706 (5th Cir. 1970) (notice of appeal notarized during the ten-day period but received afterward); *Kiger v. United States,* 417 F.2d 1194 (7th Cir. 1969), *cert. denied,* 397 U.S. 1066, 90 S.Ct. 1506, 25 L.Ed.2d 688 (1970) (timely petition *in forma pauperis* considered notice of appeal); *United States v. Conversano,* 412 F.2d 1143 (3d Cir.), *cert. denied,* 396 U.S. 905, 90 S.Ct. 219, 24

---

3. In a criminal case, the judgment includes the sentence. *Parr v. United States,* 351 U.S. 513, 518, 76 S.Ct. 912, 916, 100 L.Ed. 1377 (1956); *Berman v. United States,* 302 U.S. 211, 212, 58 S.Ct. 164, 165, 82 L.Ed. 204 (1937); *see* Fed.R. Crim.P. 32(b)(1); *see generally,* C. Wright, Federal Practice and Procedure § 534 (1969). Prior to being finally sentenced, it is difficult, at best, for a criminal defendant to file an effective notice of appeal. *See, e. g., United States v.*

*Moore,* 616 F.2d 1030 (7th Cir. 1980), *cert. denied,* —— U.S. ——, 100 S.Ct. 2972, 64 L.Ed.2d 844 (1980). Here, Ford's only challenge is to his four-year sentence. It would have been literally impossible for him to have contested that sentence prior to being resentenced. Consequently, we conclude that for purposes of this appeal, final judgment was entered on August 9.

L.Ed.2d 181 (1969) (appearance bond executed within the ten-day period considered timely notice of appeal); *see generally* 9 Moore's Federal Practice ¶ 204.19.

A letter written by an indigent prisoner within the time for appeal informing the trial court of a desire to appeal may be regarded as sufficient to constitute the taking of an appeal . . . .

*United States v. Duncan*, 310 F.2d 367, 368 (7th Cir. 1962), *cert. denied*, 373 U.S. 938, 83 S.Ct. 1542, 10 L.Ed.2d 693 (1963) (citations omitted). In *Duncan* a letter dated February 19, purporting to be a notice of appeal from an order entered on February 12, was not received by the district court until February 26. Nevertheless, it was held to be jurisdictionally sufficient.

In *Fallen* the defendant-appellant was sentenced on January 15. Immediately after sentencing he discussed an appeal with his attorney. The attorney refused to represent the defendant further, advising him to obtain new counsel promptly. In a letter dated January 23, the defendant wrote to the district court clerk regarding an appeal. The letter, bearing no postmark, arrived on January 29, beyond the expiration of the ten-day period for filing a notice of appeal under Rule 37(a)(2) of the Federal Rules of Criminal Procedure, now Rule 4(b) of the Federal Rules of Appellate Procedure. *See Advisory Committee Notes*, Fed.R.App.P. 4(b). If, as the defendant claimed, the letter had been mailed on January 23, it should have arrived within the ten-day period. The court found no basis in the record for doubting either the veracity of the date the defendant put on the letter or that the letter had been mailed on the twenty-third. Under these circumstances, the court believed that the defendant had done all he could to file within the ten-day period and that the subsequent delay was not attributable to him. Additionally, it held that the court of appeals had jurisdiction because Criminal Rule 37(a)(2) was not to be applied without regard for the appellant's circumstances. 378 U.S. at 142–44, 84 S.Ct. at 1691–92.

■ The Government contends that this case is materially different from *Fallen*. Relying upon *Ching v. United States*, 338 F.2d 333 (10th Cir. 1964), *cert. denied*, 379 U.S. 1005, 85 S.Ct. 732 (1965), it argues that although Ford's *pro se* notice of appeal is dated August 16, the notarization stamp dated August 20 is determinative of the date upon which Ford tendered the notice to prison authorities for mailing. The Government claims that if the notice was tendered on the twentieth, then Ford, unlike the defendant in *Fallen*, did not do all that he could to file within the ten-day period. We do not agree with the Government's assertion that the date of the notarization stamp is determinative of the date of tender. *Ching* does not conflict with this view. It held that because the ten-day period for filing a notice of appeal commenced upon the appellant's receipt of the order at issue on appeal, his notice of appeal was filed in time. Therefore, the date of the notarization stamp was irrelevant. We hold that the date of the notarization stamp is only some evidence of the date of tender. Otherwise, an incarcerated, *pro se* appellant would be at the mercy of prison officials in his efforts to file a timely notice of appeal. *Cf. United States v. Solly, supra*. Except for the notarization stamp, there is no basis in the record upon which to doubt the veracity of the date Ford put on the notice of appeal and, therefore, we assume that the notice was tendered on the sixteenth. If so, Ford cannot be blamed for the failure of the notice to arrive in Hammond, Indiana, less than an hour's drive from Chicago, on or before the twentieth, and under *Fallen* we have jurisdiction.

■ Moreover, regardless of the date of tender, there is another basis for our jurisdiction. The judicial philosophy embraced in *Fallen* and its progeny subsequently was absorbed into the federal rules. 9 Moore's Federal Practice ¶ 204.16. Rule 4(b) of the Federal Rules of Appellate Procedure authorizes the granting of an extension of the time for filing a notice of appeal for thirty days beyond the expiration of the initial ten-day period upon a showing of excusable neglect. Thus, under the current appellate

rules a notice of appeal must be filed within forty days after entry of judgment. *United States v. Lucas*, 597 F.2d 243 (10th Cir. 1979); *United States v. Umfress*, 562 F.2d 359 (5th Cir. 1977) (remanding for applications for extensions). Pursuant to Rule 4(b), in a case such as this, in which "a document is filed within the 40-day period which represents a clear assertion of an intent to appeal, courts of appeals have the power to overlook irregularities where fairness and justice so require." *United States v. Hoye*, 548 F.2d 1271, 1273 (6th Cir. 1977) (defense counsel's motion for delayed appeal filed one month after entry of judgment jurisdictionally sufficient); *see United States v. Williams*, 508 F.2d 410 (8th Cir. 1974) (district court's acceptance of late notice of appeal deemed grant of extension); *but see United States v. Stolarz*, 547 F.2d 108 (9th Cir. 1976), *appeal after remand*, 550 F.2d 488, *cert. denied*, 434 U.S. 851, 98 S.Ct. 162, 54 L.Ed.2d 119 (1977). There can be no disputing the fact that Ford's notice of appeal was filed within forty days of the entry of judgment. Under the circumstances of this case, because it would be an abuse of discretion for the district court to deny an extension, we need not remand to allow Ford an opportunity to request one. Therefore, under Rule 4(b) as construed in *Hoye*, we have jurisdiction.

### B.

■ Because the question whether the transfer of Ford's case from the Superior Court of the District of Columbia to the United States District Court for the Northern District of Indiana was authorized concerns the subject matter jurisdiction of the district court, we are behooved to resolve it, notwithstanding the parties' failure to raise or dispute it. For the reasons given below, we conclude that the transfer was proper.

The district court and the respective United States attorneys for the District of Columbia and the Northern District of Indiana purported to act pursuant to Rule 20 of the Federal Rules of Criminal Procedure which is reproduced in note 2, *ante*. Rule 20 permits interdistrict transfers under specified circumstances. However, developments since its adoption have caused us to question its application to this case.

When Rule 20 was enacted, felony violations of the District of Columbia Code were prosecuted in the United States District Court for the District of Columbia. When this was so, Rule 20 transfers out of the District of Columbia to other United States District Courts apparently were permissible, even where, as here, only violations of the District of Columbia Code were charged. *See, e. g., United States v. Batton*, 160 F.Supp. 172 (N.D.W.Va.1958). In 1970, with exceptions not applicable to this case, the United States District Court for the District of Columbia was stripped of its jurisdiction over local crimes and the local judiciary was given exclusive jurisdiction over such prosecutions. D.C.Code §§ 11–502, 11–923(b); *see Palmore v. United States*, 411 U.S. 389, 392, n.2, 93 S.Ct. 1670, 1673, n.2, 36 L.Ed.2d 342 (1973). Therefore, the permissibility of Rule 20 transfers out of the District of Columbia, where only local crimes are charged, has become somewhat unclear because defendants charged with D.C.Code crimes now may not be prosecuted in the United States District Court for the District of Columbia.[4] However, upon perusing the background and arguably relevant provisions of "The District of Columbia Court Reform and Criminal Procedure Act of 1970," P.L. 91–358, 84 Stat. 475 (1970), which effected the changes discussed above, we do not find any impediment to Rule 20 transfers in such cases.

Essentially, three provisions of the D.C. Code support the result we reach in this case. First, the Superior Court of the District of Columbia is required by the Reorganization Act to "conduct its business according to the . . . Federal Rules of Criminal Procedure . . . unless it prescribes or adopts rules which modify those

---

4. Such cases are removable to a federal court on the same bases as state criminal prosecutions. D.C.Code § 11–503. However, it is not claimed, nor does it appear, that this case was removable under the United States Code. *See* 28 U.S.C. §§ 1441 *et seq.*

rules." D.C.Code § 11–946. That section also provides a procedure for prescribing or adopting such modifications. As modified pursuant to § 11–946, in the District of Columbia, Rule 20 permits transfers from the Superior Court to United States District Courts subject to the same requirements set forth in the federal rule.[5] Second, D.C. Code § 23–563(a) authorizes arrest warrants issued by the Superior Court "to be served at any place within the jurisdiction of the United States." Subsection (c) provides as follows:

> A person arrested outside the District of Columbia on a warrant issued by the Superior Court of the District of Columbia shall be taken before a judge, commissioner, or magistrate, and held to answer in the Superior Court pursuant to the Federal Rules of Criminal Procedure as if the warrant had been issued by the United States District Court for the District of Columbia.

Although there is no indication that this provision was intended to apply to problems such as the one presented here, a literal application of its terms supports the district court's exercise of jurisdiction in this case. If the warrant for Ford's arrest had been issued by the United States District Court for the District of Columbia, a Rule 20 transfer would have been authorized. Finally, under the Reorganization Act felony violations of the District of Columbia Code, such as the ones with which Ford was charged, are prosecuted by the United States attorney for the District of Columbia in the name of the United States. D.C. Code § 23–101(c). Consequently, the provision of Rule 20 which requires the consent of the United States attorneys for both the transferor and the transferee districts is operable in a case such as this. In fact, in this case the required consents were obtained.

Although the background of the Reorganization Act reveals that Congress did not consider the problem at hand, support for the result we reach can be gleaned from it. One of the primary goals of the Reorganization Act was to alleviate what was perceived as an unacceptable delay between arrest and conviction in the District. In this regard, the Reorganization Act was promoted as an anti-crime measure for the District of Columbia. See H.Rep. No. 91–907 (91st Cong., 2d Sess.); Sen.Rep. No. 91–405 (91st Cong., 1st Sess.). Allowing Rule 20 transfers in cases such as this is consistent with the goal of expediting criminal cases in the District of Columbia. Congress apparently also believed that, partly because of its local jurisdiction, the United States District Court for the District of Columbia was overtaxed. See Sen.Rep. at 3. This justification for transferring local criminal jurisdiction from the United States District Court for the District of Columbia to the local judiciary is simply inapplicable to the other federal district courts. It is unlikely that they will become overburdened with cases transferred from the District of Columbia pursuant to Rule 20, especially because the cases will be transferred solely for the purpose of accepting pleas of guilty pursuant to previously reached agreements. In sum, we find nothing in the D.C.Code or its background which precludes the transfer in this case. Therefore, we conclude that it was proper.

### III

The merits of Ford's appeal warrant little discussion. Essentially, he claims that by accepting Parole Officer Johnson's information that the Commission's guidelines specified a five to six year Y.C.A. sentence in this case, the trial court employed a mechanical rather than an individual sentencing procedure.

---

5. Although the Reorganization Act explicitly stripped the United States District Court for the District of Columbia of its local criminal jurisdiction, it did not withdraw such jurisdiction from the other federal district courts. The absence of a provision doing so permits an inference that the other federal district courts' exercise of jurisdiction in Rule 20 cases was not meant to be disturbed by the Reorganization Act. Consequently, the modified District of Columbia Criminal Rule 20 is not an arguably impermissible expansion or conferral of jurisdiction by rule rather than by statute.

As a general proposition, "once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Dorszynski v. United States*, 418 U.S. 424, 431, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855 (1974) (footnotes and citations omitted); *see also United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. Main*, 598 F.2d 1086, 1094 (7th Cir.), *cert. denied*, 444 U.S. 943, 100 S.Ct. 301, 62 L.Ed.2d 311 (1979); *United States v. Seijo*, 537 F.2d 694, 700 (2d Cir. 1976), *cert. denied*, 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 756 (1977). Where review of a lawful sentence is conducted, the trial court's sentence will be upheld absent a plain abuse of discretion. *United States v. Cardi*, 519 F.2d 309, 311–12 (7th Cir. 1975). Ford's sentence is well within the range provided by the relevant statute, D.C.Code § 22–401, of one to ten years. Therefore, we need only to determine whether the trial court plainly abused its sentencing discretion. We find that it did not.

Surely, the court's awareness of the parole guidelines does not invalidate Ford's sentence. Were Ford claiming that the trial court abdicated or the parole officer usurped the sentencing authority, this would be a different case. However, the record precludes such a claim. The court was informed that Ford was ineligible for a Y.C.A. sentence and that, even if a Y.C.A. sentence were permissible, under the guidelines such a sentence would be five to six years imprisonment. Nevertheless, the court ultimately sentenced Ford to only four years imprisonment. Therefore, the court clearly utilized its own judgment in determining Ford's sentence.

The record also refutes Ford's claim that the trial court sentenced him according to a mechanical formula. After imposing the nine year sentence, the court ordered that Ford be given extensive physical and psychological examinations. It reviewed the results of those examinations and then, *sua sponte*, reduced Ford's sentence appreciably, from nine to four years. This evidences the court's particularized considera-

tion of many factors in deciding upon an appropriate sentence for Ford.

Finally, Ford claims that the court intended to impose an adult sentence approximating the Y.C.A. sentence which was not available. He argues that the Parole Commission has thwarted the court's intention by making him ineligible for parole. This argument attacks the execution, not the validity, of the sentence itself. Consequently, it may not be considered in this appeal, but must be raised in a petition pursuant to 28 U.S.C. § 2241 in the district in which Ford is incarcerated. *Blau v. United States*, 566 F.2d 526 (5th Cir. 1978); *Wright v. United States Board of Parole*, 557 F.2d 74 (6th Cir. 1977); *Andrino v. United States Board of Parole*, 550 F.2d 519 (9th Cir. 1977); *United States v. Wagner*, 455 F.Supp. 1195 (E.D.Wis.1978).

Affirmed.