**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Fred ROBERTS, Defendant-Appellant.**

No. 83–3294.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1984.

Decided Nov. 6, 1984.

As Amended Nov. 7, 1984.

Certiorari Denied March 18, 1985. See 105 S.Ct. 1770.

**406**

Andrea L. Davis, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Allen E. Shoenberger, Chris Hurley, Law Student, Chicago, Ill., for defendant-appellant.

Before CUMMINGS, Chief Circuit Judge, CUDAHY, Circuit Judge, and GORDON, Senior District Judge.*

CUDAHY, Circuit Judge.

Appellant Fred Roberts appeals from an order of the district court under which he is required to forfeit a 1935 Packard automobile pursuant to 18 U.S.C. § 1963. The forfeiture was agreed to in a plea bargain Roberts struck with the government in April, 1983. He now argues that the Packard was not subject to forfeiture, and that nothing he agreed to establishes either that it was purchased with profits from an illegal enterprise, or that it was part of the assets of an illegal enterprise.

---

* Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

1. The money was to be forfeited in lieu of certain interests, whose transfer to a relative the government agreed not to contest.

2. The relevant passages in the plea agreement are these:
   4. (3) The defendant [and the government] have agreed that the defendant shall be sentenced to a period of five years incarceration

## I.

On May 4, 1982, a grand jury returned a seven count indictment charging the defendant Fred Roberts with mail fraud in violation of 18 U.S.C. § 1341 and with making false statements in an application for a loan from the Small Business Association, in violation of 18 U.S.C. § 1001. The defendant entered a plea of not guilty. A thirty-four count superseding indictment was returned on August 3, 1982, in which the defendant was charged with mail fraud, bankruptcy fraud, obstruction of justice and racketeering, in violation of 18 U.S.C. §§ 1341, 153, 152, 1501, 1503 and 1962. On August 16, 1982, the defendant again entered a plea of not guilty.

On April 7, 1983, pursuant to a written plea agreement, Roberts pleaded guilty in federal district court to one count of mail fraud and one count of activity in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. He was sentenced to five years imprisonment, and, under 18 U.S.C. § 1963, was to forfeit two video games, forty thousand dollars [1] and a 1935 Packard automobile said to be worth $30,000.

The Packard was apparently to be forfeited as an asset of one of the illegal enterprises, although the agreement is not explicit on this point. According to the plea agreement, Roberts had paid $26,000 toward the purchase price of the car with checks drawn on the corporation the assets of which are to be forfeited; he did this before the time of any of the illegal activity mentioned in either the indictment or the plea agreement. In addition, just before the filing of that corporation's bankruptcy petition Roberts paid the final installment with a corporation check for $2,319.81.[2]

and that a forfeiture judgment shall be taken against him consisting of forfeiture of the following:
(a) One 1935 Packard . . . .
Plea Agreement at 2.
8. In pleading guilty to Count One . . . the defendant admits the following facts which he agrees the government's evidence would prove beyond a reasonable doubt:
(1) Between May 1977 and April 1978, the defendant caused checks of [the corporation]

Neither the agreement nor anything else in the record before this court indicates whether the Packard's title is in Roberts' name or in the name of the corporation.

Judgment was entered on the docket on June 23, 1983. Because the bankruptcy trustee claimed an interest in the Packard, the forfeiture order on it was delayed and was not entered on the docket until November 30, 1983. On November 21, 1983, just before the forfeiture order was entered, Roberts filed various pro se motions. The motion identified in the docket as motion #13 was a motion to withdraw the plea made pursuant to Rule 32(d). After the entry of the forfeiture order Roberts wrote to the district court asking whether his motions had been considered before the order was entered. The clerk of the district court responded, in a letter apparently received on December 14, 1983 at the prison at which Roberts was being held, that· the court had had Roberts' motions before it when it entered the order. On December 22, 1983, the defendant, acting pro se, filed a notice of appeal.

After entry of the forfeiture order, the court gave the government until December 13, 1983 to respond to defendant's post-trial motions. The record shows no response by the government on or before December 13. In January, 1984, the government's motion to file a late response (blaming its tardiness on a busy schedule) was filed and granted, and the government filed its response. On February 14, 1984, Roberts' post-trial motions 14, 15, 16, 17 and 19 were denied and the government was given until March 30, 1984 to file an additional response to motion #13, which the district court had decided to treat as a petition under 28 U.S.C. § 2255. The government filed its supplemental response on April 5, 1984.

■ Motion #13 is apparently the only motion before the district court at the present time. While there is no jurisdictional bar to the district court's acting on such a motion, it is appropriate for that court to withhold action until this appeal has been disposed of. *United States v. Davis*, 604 F.2d 474, 482–83 (7th Cir.1979).

### II.

The government argues that this court has no jurisdiction to hear this appeal because Roberts' notice of appeal was untimely. Rule 4(b) of the Federal Rules of Appellate Procedure sets a limit of ten days from the entry of judgment, or of the order appealed from, in which to file notice of appeal, in a criminal case. On a showing of excusable neglect made during or after the ten-day period the district court may extend the time for filing for another thirty days. The order appealed from here was entered on November 30, 1983; without an extension Roberts would have had until December 12 to file his appeal.[3] He did not request such an extension; on December 22, 1983, ten days late, he filed, and the district court entered, his notice of appeal.

■ Although a timely notice of appeal is not jurisdictional in the same sense in which subject matter is jurisdictional,

---

totalling approximately $26,000 to be used to purchase one 1935 Packard·....

.    .    .    .    .

(5) On approximately May 26, 1978, knowing that he was about to file an original petition with the Bankruptcy Court ..., defendant caused a check to be drawn [on the corporation] in the amount of $2,319.81 ... to make the final payment on the 1935 Packard.

.    .    .    .    .

(6) Defendant admits that the mailing of this check ... at a time when he was contemplating bankruptcy proceedings, and then concealing from the bankruptcy court that the 1935 Packard was an asset of [the corpora-

tion] furthered the fraud on the bankruptcy court ....

Plea Agreement at 5, 6. The record shows that in fact the Packard was paid for with a loan from the Sunrise American National Bank in Florida; the checks from Roberts' corporation were made out to this bank. The record does not show whether this loan for the purchase of the automobile was to Roberts or to the corporation.

**3.** December 10 was a Saturday; under Rule 45 of the Federal Rules of Criminal Procedure and Rule 26 of the Federal Rules of Appellate Procedure, the time is extended to the following Monday.

*United States v. Ford,* 627 F.2d 807, 809 (7th Cir.), *cert. denied,* 449 U.S. 923, 101 S.Ct. 324, 66 L.Ed.2d 151 (1980); 9 MOORE'S FEDERAL PRACTICE ¶ 204.02[2], the rules governing notice are mandatory, so that this court will not take jurisdiction where they have not been substantially complied with. Where there is no good reason for allowing an appellant the extension of time he neglected to ask for below, the court will not allow such an extension.

■ On the other hand, we cannot, especially when dealing with prisoners filing on their own behalf, read the details of compliance inflexibly. Where there is good reason for allowing an extension, and the notice has been filed within the forty-day outer limit, we are not obliged to insist upon perfect compliance. In the *Notes* to the present Rules 3 and 4, the Advisory Committee on Appellate Rules said:

> Because the timely filing of a notice of appeal is "mandatory and jurisdictional," ... compliance with the provisions of those rules is of the utmost importance. But ... decisions under the present rules [the former Fed.R.Civ.P. 5(e), 73; Fed.R. Crim.P. 37] which dispense with literal compliance in cases in which it cannot be fairly exacted should control interpretation of these rules.

(Citing *Fallen v. United States,* 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964); *Richey v. Wilkins,* 335 F.2d 1 (2d Cir.1964); *Halfen v. United States,* 324 F.2d 52 (10th Cir.1963); *Riffle v. United States,* 299 F.2d 802 (5th Cir.1962).)

In *Ford, supra,* we found jurisdiction, noting that circumstances would have made it an abuse of discretion for the district court to deny an extension. We said:

> [I]n a case such as this, in which a "document is filed within the 40-day period which represents a clear assertion of an intent to appeal, courts of appeals have the power to overlook irregularities where fairness and justice so require."

627 F.2d at 811 (quoting *United States v. Hoye,* 548 F.2d 1271, 1273 (6th Cir.1977).) The court noted that although the notice of appeal was filed with the district court nine days late, it was clear that the prisoner had submitted the notice to prison officials within the ten-day period. In this case, however, Roberts did not, like Ford, submit his notice to prison officials within the time allowed. Roberts did not file until after the ten-day limit had passed, and he did not ask for the thirty-day extension.

Roberts submits that his appeal was filed within the thirty-day extension period and argues that acceptance of the notice of appeal by the district court should be considered an automatic grant of extension of time. He points out that the Eighth Circuit approved such a rule in *United States v. Williams,* 508 F.2d 410 (1974), where acceptance of a late notice of appeal was construed to be a finding of excusable neglect. Similar rules have been approved in the Fifth, Sixth and Tenth Circuits. *See United States v. Lucas,* 597 F.2d 243 (10th Cir.1979); *United States v. Umfress,* 562 F.2d 359 (5th Cir.1977); *United States v. Hoye,* 548 F.2d 1271 (6th Cir.1977). It is doubtful, however, whether such a broad rule is or ought to be the rule of this Circuit. Because of the routine way in which appeals are handled in the office of the district court clerk, such a rule might effectively abrogate the ten-day limit and replace it with one granting forty days to file.

While there is no automatic thirty-day extension, however, and while Roberts did not have his filing delayed by prison officials, he did remain in correspondence with the district court and actively pursue his litigation. Roberts sent a letter to the district court clerk asking whether his objections had been considered before the forfeiture order was entered; this letter was sent within the ten-day period. The reply was delayed in the prison mail system and was not received until several days after the ten-day deadline for filing had passed. Since the nature of Roberts' appeal depended on the answer to his query, it may arguably be considered a practical pre-condition to the filing of a notice of appeal. At the time in question Roberts was acting on his own behalf and had to depend on the

prison mail for his correspondence with the court.

Where prisoners, acting pro se, have been in correspondence with the courts during the ten-day period, federal courts have found that the filing requirement has been satisfied. Most of the cases deal with prisoners who have informally notified some official of their intent to file an appeal. In *Fallen v. United States*, 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964), defendant had sent a letter regarding an appeal to the clerk of the district court within the ten-day period. The Supreme Court held that the filing requirement had been satisfied. Similarly, in *United States v. Duncan*, 310 F.2d 367 (7th Cir.1962), *cert. denied*, 373 U.S. 938, 83 S.Ct. 1542, 10 L.Ed.2d 693 (1963), an indigent prisoner sent a letter expressing a desire to appeal to one of the judges within the ten-day period. Again, the filing requirement was found to have been satisfied.

■ Here, Roberts' letter apparently made no mention of his appeal. Nevertheless, his communication with the court was necessarily awkward and subject to delays, and there is no indication that Roberts was anything but diligent in pursuing his appeal. Since he had no other way of finding out just what the judge had considered before entering the forfeiture order, and since the nature of his appeal would depend on that information, we are inclined to take a practical view in assessing whether he has satisfied the filing requirement.[4] Under the narrow circumstances of this case, therefore, we will consider the acceptance of the notice of appeal by the district court to be tantamount to a finding of excusable neglect.

### III.

Roberts contests the forfeiture of the 1935 Packard, arguing that what he conceded in the plea agreement does not justify that forfeiture. He claims that the automobile is a personal asset and not the asset of any enterprise said to be involved in the legal violations for which he has been convicted. He also claims, and the government concedes, that the bulk of the purchase of the Packard took place before those violations and thus could not have involved funds derived from any of the alleged illegal activities. He argues therefore that the automobile falls outside the forfeiture provisions of the RICO statute.

RICO authorizes forfeiture of (1) interests "acquired or maintained in violation of" the racketeering provisions, and (2) interests "in any enterprise ... established, operated, controlled, [or] conducted ... in violation of" those provisions. 18 U.S.C. § 1963(a). While the second provision subjects the assets of enterprises involved in racketeering to forfeiture, the first has been interpreted to subject all profits and all interests derived from such activity to forfeiture. *Russello v. United States*, 464 U.S. 16, 104 S.Ct. 296, 299–300, 78 L.Ed.2d 17 (1983). Since no one has claimed that the $26,000 paid on the Packard prior to the RICO activity was derived from the illegal activity, the question before us is whether the provisions of the plea agreement provide a sufficient factual basis on which the government might convince a jury, beyond a reasonable doubt, that the automobile is an asset of the corporation.

■ The trial court is under a special burden in dealing with forfeitures resulting from pleas of guilty to RICO violations. As in the case of any guilty plea, the court must make "such inquiry as shall satisfy it that there is a factual basis for the plea." FED.R.CRIM.P. 11(f). The mere fact that the defendant has agreed that an item is forfeitable, in a plea agreement, does not make it so; the trial court must ascertain whether it falls into one of the two forfeiture categories in 18 U.S.C. § 1963(a). The possibility of error in determining whether an item falls under one of these two headings is considerably greater than the possi-

---

**4.** Moreover, should we dismiss here, Roberts could file another Rule 35 motion at any time and appeal from its denial. Thus, dismissal of this appeal would be but "wasteful circularity." *Heflin v. United States*, 358 U.S. 415, 418 n. 7, 79 S.Ct. 451, 453 n. 7, 3 L.Ed.2d 407 (1959).

bility of error in determining the maximum jail sentence prescribed by law. *United States v. Spilotro*, 680 F.2d 612, 617–18 (9th Cir.1982). A defendant's waiver of his right to trial cannot be said to have a factual basis, where a forfeiture of property is involved, unless the property is in fact subject to forfeiture. We emphasize that the trial court must satisfy itself that this condition is satisfied.

In ¶ 8(6) of the plea agreement Roberts agreed that the government could prove that he had concealed from the bankruptcy court that the Packard was an asset of the corporation. He argues now that what he meant to concede there was that part of the car—to the extent of $2,319.81—was an asset of the corporation. In ¶ 8(1) of the plea agreement he conceded that checks drawn on the corporation totalling $26,000 were used in the purchase of the car. He argues now that this fact does not establish that the automobile is—to the extent of $26,000—an asset of the corporation.

Setting aside the contested concession of ¶ 8(6) that the Packard was an asset of the corporation, a jury might well find it to be such an asset on the basis of what is admitted in ¶ 8(1). The use of corporation funds, if it does not prove conclusively that the corporation acquired the automobile as an asset, at least proves that Roberts, the sole owner, did not distinguish his personal funds from those of the corporation in the purchase of the car; and in oral argument the appellant relied on that commingling of funds to show that it had not been established that the car belonged to the corporation. Such a mingling of assets produces an entirely different effect in the common law; the assets of a majority shareholder who treats the corporation as an "alter ego" are reachable when the corporation is sued. *Panther Pumps & Equipment v. Hydrocraft, Inc.*, 566 F.2d 8, 25 (7th Cir. 1977), *cert. denied, sub nom. Beck v. Morrison Pump Co.*, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978); *cf. G.M. Leasing v. United States*, 429 U.S. 338, 350–51, 97 S.Ct. 619, 627–28, 50 L.Ed.2d 530 (1977). Thus it would be odd if a defendant could remove certain assets from the reach of RICO by claiming that the enterprise in question was just his alter ego, and by claiming that he did not distinguish his own purchases from those of the corporation.

The RICO defendant who has not distinguished his funds from those of the illegal enterprise does not, in virtue of that alone, expose all his personal assets to forfeiture. At the same time, he cannot be allowed to protect assets by claiming that, although they were purchased with corporation funds, the assets were really purchased for personal use. The question, therefore, is not merely one of the formalities of title: to the extent that Roberts used corporation funds in the purchase of the Packard, a jury would have been justified in finding that it is the property of the enterprise.

On the basis of concessions made in the plea agreement, then, the 1935 Packard is forfeitable, under 18 U.S.C. § 1963(a)(2), as an asset of an enterprise conducted in violation of the racketeering provisions of the Act.

The order of the district court is therefore Affirmed.