**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Brett C. KIMBERLIN,**
**Defendant–Appellant.**

**Nos. 88–1181, 88–1650.**

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 31, 1990.

Decided March 28, 1990.

Rehearing and Rehearing In Banc
Denied April 25, 1990.

---

Scott Levine, Office of the U.S. Atty.,
Chicago, Ill., Deborah J. Daniels, U.S.
Atty., and John J. Thar, Asst. U.S. Atty.,
Office of the U.S. Atty., Indianapolis, Ind.,
for plaintiff-appellee.

Brett C. Kimberlin, Memphis, Tenn., pro
se.

Before POSNER, EASTERBROOK and
RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

In 1988 this court dismissed Brett Kimberlin's appeal for want of jurisdiction, because the notice of appeal reached the clerk's office after the time provided by

**1263**

Fed.R.App.P. 4. Shortly after we entered judgment, the Supreme Court held in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), that an indigent, unrepresented prisoner may file a notice of appeal by tendering it to prison officials rather than to the clerk of the district court. The Court remanded Kimberlin's case to us, —— U.S. ——, 109 S.Ct. 39, 102 L.Ed.2d 19 (1988), with instructions to reconsider in light of *Houston*. We must decide whether an imprisoned litigant represented by counsel receives the benefit of *Houston*.

The sequence is this. After the Supreme Court declined to review one of Kimberlin's many criminal convictions, *United States v. Kimberlin*, 805 F.2d 210 (7th Cir.1986), cert. denied, 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987), he petitioned the district court to reduce his sentence on the authority of the version of Fed.R.Crim.P. 35(b) that applies to pre-Guidelines cases. The court denied this motion on January 15, 1988, and sent copies of the decision to Donald V. Morano of Chicago, whom this court had appointed as Kimberlin's lawyer under the Criminal Justice Act on the initial appeal, and to Richard Kammen of Indianapolis, who had filed an appearance "for the purpose of filing and receipt of papers." Under Fed.R.App.P. 3(a) and 4(b) Kimberlin had until January 25 to file a notice of appeal. He mailed a notice from prison on January 24, but the court did not receive it until January 28. It has been docketed as No. 88–1181.

Kimberlin then asked the district court to extend the time, which a judge may do if the delay was attributable to "excusable neglect". Kimberlin maintained that Morano had not received the decision until January 23, and that he posted the notice of appeal the next morning; Kimberlin portrayed this as diligence justifying an extension of time. After observing that he usually rejects out of hand *pro se* motions from litigants represented by counsel, the district judge went on to say that he did not believe Kimberlin's assertion, which counsel had not backed up. Judge Dillin wrote: "defendant's unverified statement

to such effect has no evidentiary value." Morano then verified that he received a copy of the order on January 23. (Kammen was silent about the date he obtained the decision.) Judge Dillin declined to reconsider, explaining: "If counsel received [the] order on January 23, 1988, he could have mailed his notice of appeal timely." Morano filed a notice of appeal, No. 88–1650, on Kimberlin's behalf to contest this decision.

First in line stands the question whether the district judge abused his discretion in declining to extend the time under Rule 4(b). Appeal No. 88–1181 suffices to present this question; it is superfluous to file notices to argue that the initial one places the case before us, so we dismiss No. 88–1650.

■ Someone who misses the deadline for appeal must throw himself on the mercy of the district judge, for Rule 4(b) authorizes but does not compel extensions. *Lorenzen v. Employees Retirement Plan*, 896 F.2d 228, 232–33 (7th Cir.1990). Although power to dispense mercy is not licence for whimsy—all judicial discretion must be exercised rationally, and without regard to forbidden characteristics such as race—appellate review is deferential. E.g., *United States v. Douglas*, 874 F.2d 1145, 1163 n. 31 (7th Cir.1989); *Parke–Chapley Construction Co. v. Cherrington*, 865 F.2d 907, 911 (7th Cir.1989). Judge Dillin exercised reasoned judgment in declining to treat the delay as "excusable neglect". Morano received notice on January 23; Kammen undoubtedly received it earlier. All Morano had to do was pick up the phone and call Kammen, telling him to trot across the street with a notice of appeal (or hand one to a messenger). Instead of calling co-counsel on hand at the seat of court, Morano tossed the ball to his client, ensuring that even a notice posted posthaste would reach the clerk close to or past the deadline. If this is "neglect", it is not "excusable".

Kimberlin is no stranger to appellate proceedings and has demonstrated his ability to file timely notices. He has averaged two appeals per year in this court over the last decade. Morano has been Kimberlin's lawyer in at least four cases since 1985 that have found their way here: *United States v. Kimberlin*, 805 F.2d 210 (7th Cir.1986) (direct criminal appeal); *Kimberlin v. United States Department of Justice*, 788 F.2d 434 (7th Cir.1986) (Privacy Act); *United States v. Kimberlin*, 781 F.2d 1247 (7th Cir.1985) (direct criminal appeal); *United States v. Kimberlin*, 776 F.2d 1344 (7th Cir.1985) (appeal of order denying a Rule 35 motion concerning an earlier conviction). Kimberlin has prosecuted other appeals, both with counsel, e.g., *United States v. Kimberlin*, 675 F.2d 866 (7th Cir.1982), and without, e.g., *Martin and Kimberlin v. Brewer*, 830 F.2d 76 (7th Cir.1987); *Kimberlin v. Brewer*, 825 F.2d 1157 (7th Cir.1987); *Kimberlin v. Department of the Treasury*, 774 F.2d 204 (7th Cir.1985). There are many other, unpublished decisions.

■ Morano's explanation—presented to us even though not hinted at in the district court—is that Morano wanted Kimberlin to file the notice of appeal so that there would be no chance of Morano's being on the hook as uncompensated counsel on appeal. Churlish to start with—lawyers may not play games with jurisdictional deadlines, and thus their clients' cases, to improve the prospects of payment—this excuse reflects ignorance of the law. Circuit Rule 4 provides that trial lawyers in criminal cases, whether retained or appointed, *must* continue as counsel on direct appeal, unless relieved by this court. Lawyers on post-conviction matters are not locked in, whether or not they file the notice of appeal. *DiAngelo v. Illinois Department of Public Aid*, 891 F.2d 1260 (7th Cir.1989). So no matter the source of Morano's representation in the district court (a question on which the record is opaque), and no matter whether Rule 4 commits a lawyer filing a Rule 35 motion to continue as counsel on appeal, filing the notice of appeal would not have exposed Morano to any duties beyond those to which Rule 4 applies.

One duty of every lawyer is to perfect a timely appeal at the client's request. *United States v. De La Cruz*, 870 F.2d 1192,

1193 n. 3 (7th Cir.1989); *United States v. Flowers,* 789 F.2d 569 (7th Cir.1986). A reasonable mistake of law may justify (though it is unlikely to compel) an extension of time, we held in *Lorenzen;* a combination of putting one's own welfare ahead of the client's with an unreasonable mistake of law surely does not compel a district court to exercise favorable discretion under Rule 4(b). Although a mistake in taking a direct appeal from a conviction would be ineffective assistance of counsel, giving the defendant another opportunity to appeal without need for a formal extension of time from the district court, a blunder in prosecuting post-conviction motions under Rule 35 does not authorize a similar deferred appeal, because there is no right to effective assistance of counsel after the direct appeal. *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); see also *United States v. Hill,* 826 F.2d 507 (7th Cir.1987).

Kimberlin's appeal is timely only if *Houston v. Lack* makes it so. Rule 3(a) says that the notice of appeal must be filed with the clerk of the district court. If *Houston* had held that the warden of a prison is a "clerk" for purposes of Rule 3(a), then the fact that Kimberlin is represented by two lawyers would be immaterial. But the Court did not do this. It stressed that an unrepresented prisoner is unable to protect his interests except through the warden. E.g., 108 S.Ct. at 2382: "The situation of prisoners seeking to appeal without aid of counsel is unique." Indeed, the opening line of the opinion says all that is necessary to understand both the motivation of and the limitations on the Court's holding: *"Pro se* prisoners can file notices of appeal to the Federal Courts of Appeals only by delivering them to prison authorities for forwarding to the appropriate district court." *Id.* at 2381. The Court adopted, 108 S.Ct. at 2382, Justice Stewart's concurring opinion in *Fallen v. United States,* 378 U.S. 139, 144, 84 S.Ct. 1689, 1692, 12 L.Ed.2d 760 (1964), which drew this line explicitly: "[F]or purposes of [the rule governing appeals], a defendant incarcerated in a federal prison and acting without the aid of counsel files his notice of appeal in time, if [within the time limit] he delivers such notice to the prison authorities for forwarding to the clerk of the District Court."

█ Prisoners represented by counsel need not depend on their custodians. Represented prisoners are in no different position than litigants who are at liberty. Free or in confinement, litigants trust their attorneys to lodge timely notices of appeal. When the attorney defaults, the client suffers. E.g., *Williams v. Hatcher,* 890 F.2d 993 (7th Cir.1989). Although inmates lack one option other litigants possess—to deliver the notice by hand—this is not common for represented parties. As a practical matter, Kimberlin's options were not reduced by confinement. Because *"[p]ro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them", *Houston,* 108 S.Ct. at 2382–83, the court must accept as enough what they can do: hand the notice to the persons at the prison responsible for sending it to the clerk. Represented prisoners have the same principal options as represented non-prisoners. Rules 3 and 4 apply in full force to them. Remedies lie against their attorneys, if anywhere. Kimberlin's notice of appeal was untimely.

Although this ends the litigation for Kimberlin, there is one more question for Morano. The United States asks us to strike Morano's reply brief, and we grant this motion. The opening paragraph of the reply brief conveys its flavor:

Judge Dillin's spitefulness toward Kimberlin and the casuistry of AUSA Thar in defending Judge Dillin are apparent from what we have presented in our original brief and from the government's brief in response. The government's response by AUSA Thar is an exercise in sophistry. Instead of this brief, the attorney assigned to write the brief for the government, as an officer of the court, should have written the equivalent of an *Anders* brief or waived its right to respond.

Later on, Morano writes that "Judge Dillin and AUSA Thar have deliberately neglect-

ed their duties in this case." The brief concludes:

> We have ... demonstrated the bad faith of AUSA Thar in defending the inexcusable rulings of Judge Dillin. The personal animus of both of them toward Kimberlin and AUSA Thar's desire to ingratiate himself with Judge Dillin have already delayed the consideration of the appeal on the merits for six months and required appointed counsel and the court to spend many unnecessary hours. We therefore respectfully ask the court in a published opinion to impose personal sanctions against AUSA Thar and to censor [sic] Judge Dillin.

Morano anticipated that a published opinion would be appropriate, but neither the district judge nor the Assistant United States Attorney is the object of our censure.

Courts expect—demand—responsible advocacy from members of the bar. Nothing in this record supports the charge that Judge Dillin or the Assistant United States Attorney harbors a grudge against Kimberlin. Both have played professional roles: the judge in passing on motions presented to him, the attorney in raising jurisdictional points that we have concluded are correct. Lawyers who launch ad hominem attacks on the bench and their adversary bring dishonor only on themselves. This is not the first case in which Morano's pen has been dipped in vitriol rather than ink. It *will* be the last—for if Morano desires to write in this vein, it will not be as a member of our bar.

The motion to strike is granted. Appeal No. 88–1650 is dismissed as superfluous. Appeal No. 88–1181 is dismissed for want of jurisdiction.

### ORDER

■ The "Suggestion for Rehearing In Banc" contends that the appeal is timely because "[t]his court has ruled that 'the ten-day period for filing a notice of appeal commence[s] ... upon the appellant's receipt of the order at issue on appeal.' *United States v. Ford*, 627 F.2d 807 (7th Cir.1980)." We have "ruled" no such thing. *Ford* held, applying *Fallen v. Unit-* ed States, 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964), and anticipating *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), that the effective date of the notice of appeal by an indigent, unrepresented prisoner is the date the prisoner hands the notice to prison officials. It does not hold, and this court has never held, that the time within which to file a notice of appeal commences with the receipt rather than the entry of the order appealed from.

There were two possible dates in *Ford*: when the prisoner gave the notice to his jailers, and when they had it notarized (four days later); the government argued that the date of notarization was the right one, relying on *Ching v. United States*, 338 F.2d 333 (10th Cir.1964). The panel in *Ford* distinguished *Ching* with this language:

> We do not agree with the Government's assertion that the date of the notarization stamp is determinative of the date of tender. *Ching* does not conflict with this view. It held that because the ten-day period for filing a notice of appeal commenced upon the appellant's receipt of the order at issue on appeal, his notice of appeal was filed in time. Therefore, the date of the notarization stamp was irrelevant.

*Ford* did not imply agreement with this aspect of *Ching*. No other court has done so. *Ford* is the only case that has ever cited *Ching*. We doubt that *Ching* is the governing rule today even within the Tenth Circuit. *Ching* interpreted Fed.R.Crim.P. 37(a)(2), the predecessor to the current rule. Neither *Ching* nor the case on which it relies, *Lohman v. United States*, 237 F.2d 645 (6th Cir.1956), has been cited since Fed.R.App.P. 4(b) replaced Rule 37(a)(2) in 1967.

*Lohman* and its predecessors all trace to *Hill v. Hawes*, 320 U.S. 520, 64 S.Ct. 334, 88 L.Ed. 283 (1944), which held that because the rules require the clerk to notify counsel of a judgment, a court may vacate and reenter its judgment to allow an appeal. An amendment to Fed.R.Civ.P. 77 in 1946 reversed *Hill*, which in any event

supposed that the *entry* of the order on the docket mattered. *Hill* offered only a method to get extra time. Difficulties created by failures to mail judgments or to receive them by mail have led to proposals to amend Rule 77 and Appellate Rule 4(a)(6), to reinstate a limited privilege for district judges to extend the time. See 127 F.R.D. 237, 251, 389–90 (1989). But these proposals, like our opinion in this case, start with the premise that the time starts to run on entry of judgment on the docket rather than from notice to the parties.

Appellate Rule 4(b) specifies that the notice of appeal must be filed "within 10 days after the entry of" the order appealed from. Cases such as *Acosta v. Louisiana Department of Health and Human Resources*, 478 U.S. 251, 106 S.Ct. 2876, 92 L.Ed.2d 192 (1986), make it clear that "entry" in Rule 4 means entry on the docket, not mailing or receipt. The uniform contemporary practice, supported by the text of the rule, is to start the count on the date judgment is entered and rely on the provisions of Rule 4(b) for extensions in the event the clerk tarries or the mail miscarries.

Although Kimberlin filed a "Suggestion for Rehearing In Banc" without a petition for rehearing, this court's practice is to treat such a document as containing an implied petition for rehearing. The members of the panel have voted to deny rehearing. See *Missouri v. Jenkins*, —— U.S. ——, —————, 110 S.Ct. 1651, 1660–1662, 109 L.Ed.2d 31 (1990). No judge in active service has called for a vote on the suggestion of rehearing in banc, which is rejected.