**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kenneth N. CRAIG, Defendant–
Appellant.**

**No. 03–2424.**

United States Court of Appeals,
Seventh Circuit.

Argued April 20, 2004.

Decided May 13, 2004.

Michelle L. Jacobs (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Pamela Pepper (argued), Milwaukee, WI, for Defendant–Appellant.

Before EASTERBROOK, EVANS, and WILLIAMS, Circuit Judges.

EASTERBROOK, Circuit Judge.

Charged with possessing a firearm despite being a convicted felon, see 18 U.S.C. § 922(g), Kenneth Craig pleaded guilty and was sentenced to 57 months' imprisonment. At the conclusion of sentencing, Craig announced that he did not want to appeal. Just in case, however, the judge told Craig that his lawyer would continue to represent him through the period allowed for appeal and would file a notice at his request. Craig said that he understood.

The judgment was entered on March 12, 2003, so the time for appeal expired on March 26. See Fed. R.App. P. 4(b)(1)(A)(i), 26(a). On April 8 a notice of appeal, signed by Craig personally, arrived at the district court. When we directed the parties to address the question whether the appeal is timely, Craig's lawyer asked the district judge for a 30–day extension under Rule 4(b)(4). The application represented that Craig had changed his mind while in prison and then prepared and mailed a notice on his own because he thought that his lawyer would no longer represent him. The district court denied this motion, ruling that changing one's mind after the time for appeal has expired is not "good cause" for an extension, and that Craig is in no position to plead ignorance in light of the information furnished in open court.

Despite this ruling, Craig has bombarded us with additional statements and affidavits in an effort to show an entitlement to an appellate decision. The latest asserts that he put the notice of appeal in the prison mail system on March 20, while time remained, and that he acted *pro se* not because of any misunderstanding but because he feared that he would not be able to reach counsel by phone before the time for appeal expired. We directed the parties to brief the jurisdictional question along with the merits—which we need not reach.

Having told the district judge that he changed his mind and mailed his notice after the time for appeal expired, Craig now tells us that he appealed in time after all-if he really did deposit the notice on March 20 and if he is entitled to the

benefit of the "mailbox rule" for prisoners. See Fed. R.App. P. 4(c). We doubt that a litigant who says one thing to the district judge in an effort to get an extension of time should be allowed to advance an inconsistent view of the facts after the district judge says no. Perhaps these seemingly divergent assertions could be reconciled on the ground that Craig wrongly thought that the time expired before March 20 because he does not understand how the federal rules calculate time. Sentencing took place on March 6, but the clock does not start until a judgment is entered on the docket, and when the time is 10 days or fewer intermediate weekends and holidays are excluded. Thus "10 days" ran from March 6 to March 26, while a layperson might have supposed that the time expired on March 16. It does not matter. We may suppose that things happened exactly as Craig now says—notice deposited in the prison mail system on March 20 but delayed in transit to the district court. That is not enough to make the appeal timely.

■ The United States contends that the appeal is late because the mailbox rule applies only if the prisoner is unrepresented. As we said in *United States v. Kimberlin*, 898 F.2d 1262, 1265 (7th Cir.1990), a prisoner who has the assistance of counsel need only pick up the phone. Craig did not try that route, and the United States contends that he therefore cannot take advantage of the mailbox rule. Yet *Kimberlin* addressed the status of the mailbox rule when it was a matter of common law, having been invented in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). Rule 4 was rewritten in 1993 (and revised in 1998) not only to make the mailbox rule official but also to impose some limits. Rule 4(c)(1) requires a prisoner to use a legal-mail system if the prison has one. (This provides verification of the date on which the notice was dispatched.) If the prison lacks such a system: "Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid." *Ibid.*

Today the mailbox rule depends on Rule 4(c), not on how *Kimberlin* understood *Houston*. Rule 4(c) applies to "an inmate confined in an institution". Craig meets that description. A court ought not pencil "unrepresented" or any extra word into the text of Rule 4(c), which as written is neither incoherent nor absurd. Craig therefore is entitled to use the mailbox rule. Accord, *United States v. Moore*, 24 F.3d 624, 626 n. 3 (4th Cir.1994).

■ Still, to get its benefit he had to comply with it, and he did not—not when he filed the appeal, and not in the ensuing year. His affidavit states that he deposited the notice in the prison mail system on March 20, 2003, but not that he prepaid first-class postage. Rule 4(c)(1) requires the declaration to state only two things; 50% is not enough. The postage requirement is important: mail bearing a stamp gets going, but an unstamped document may linger. Perhaps that is exactly what happened: Craig may have dropped an unstamped notice of appeal into the prison mail system, and it took a while to get him to add an envelope and stamp (or to debit his prison trust account for one). The mailbox rule countenances *some* delay, but not the additional delay that is inevitable if prisoners try to save 37¢ plus the cost of an envelope. Rule 4(c)(1) is clearly written; any literate prisoner can understand it (and Craig is literate). Respect for the text of Rule 4(c) means that represented prisoners can use the opportunity it creates; respect for the text equally means that prisoners must use that opportunity

in the way the rule specifies. If we were authorized to revise the rule (which we are not), we would be more likely to interpolate "unrepresented" in front of "inmate" than to delete the phrase "and state that first-class postage has been prepaid."

Craig's notice of appeal was untimely, and his appeal is dismissed.