**UNITED STATES of America, Appellee,**

v.

**Christopher Frederick RECKMEYER, Appellant.**

No. 85–5158.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1985.

Decided March 21, 1986.

Rehearing and Rehearing En Banc Denied April 30, 1986.

See also 627 F.Supp. 412.

---

Stanley J. Reed (Lerch, Early, Roseman & Frankel on brief), for appellant.

Karen P. Tandy, Asst. U.S. Atty. (Elsie L. Munsell, U.S. Atty., William G. Otis, Justin W. Williams, Kent S. Robinson, Asst. U.S. Attys., on brief), for appellee.

Before WIDENER, PHILLIPS and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

Christopher Reckmeyer appeals the district court's order denying his motion to withdraw his plea of guilty to a violation of the continuing criminal enterprise (CCE) statute, 21 U.S.C. § 848, and to two counts of filing false tax returns in violation of 26 U.S.C. § 7206.[1] Reckmeyer also asserts that the district court should have permitted him to withdraw his plea because the government violated the plea bargain agreement. In exchange for the guilty plea, the government agreed, *inter alia,* that it would not use against Reckmeyer anything he said "to law enforcement agents, government attorneys, to any grand juries or at any trials unless he should make false statements or commit perjury." Reckmeyer claims the government violated this provision by providing detrimental information to the probation office for use in Reckmeyer's presentence report. He also contends that the district court violated Fed.R.Crim.P. 11 by failing to inform him properly of the elements of the CCE charge and resulting forfeiture and by not determining the factual basis for forfeiture. We affirm.

Reckmeyer and a number of individuals operated a large marijuana and hashish distribution ring for over ten years. In January 1985, a grand jury indicted him for conducting a continuing criminal enterprise and for thirteen related offenses. He negotiated a plea bargain agreement and pled guilty. The agreement was extensive and included the statement that Reckmeyer was the leader of an organization responsible for the distribution of a total of more than one hundred sixty-nine tons of marijuana and more than ten tons of hashish in the course of fifty ventures in Virginia and elsewhere, and that he supervised approximately twenty employees in this illegal enterprise.[2] The plea agreement required Reckmeyer to forfeit forty-one assets specifically listed in Count 2(B) of the indictment, and any proceeds from those assets, and "all other domestic and foreign assets in which he has any direct or indirect interest or control, which are the proceeds of unlawful drug activities or are directly or indirectly related to unlawful drug activities." The government agreed to dismiss the remaining counts and not to use against him his statements made during his debriefing by government attorneys and agents. During debriefing, Reckmeyer informed government agents that in late summer or early fall 1984, while he was under investigation, he purchased 21,000 pounds of marijuana. He also ordered another 100,000 pounds for receipt in the fall of 1985. The government made this infor-

---

1. The district court sentenced Reckmeyer to 17 years imprisonment on the CCE count. The CCE conviction also required the forfeiture of Reckmeyer's extensive holdings in real and personal property which he had acquired with the profits from his drug operations. The court also sentenced him to two two-year terms on the tax counts to run concurrently with his CCE sentence.

2. At the Rule 11 hearing, Reckmeyer disputed the exact tonnage of narcotics which his organization distributed, but not the number of distribution ventures. He also did not dispute that the quantities were enormous.

mation available to the probation officer conducting the presentence investigation. The probation officer included it in his report to the district court.

## I.

■ We consider first Reckmeyer's contention that the district court failed to comply with the requirements of Fed.R.Crim.P. 11(c).[3] Reckmeyer asserts that the district court failed to inform him of the nature and the elements of the CCE charge and the forfeiture sanction resulting from a CCE conviction. He contends that the court did not inform him that the government must prove (1) that he had committed a predicate Title 21 offense; (2) that such violation was a part of a continuing series of at least three Title 21 violations; and (3) that he acted in concert with five or more people as their organizer or supervisor in committing these violations.

We conclude that the district court fulfilled the requirements of Rule 11(c). At the hearing required by the rule, the government presented the outline of the plea agreement, including the counts to which Reckmeyer was pleading guilty and

the possible penalties resulting from conviction of those offenses. The government stated that the penalties included "the mandatory forfeiture of the defendant's profits from the enterprise, as well as the defendant's interest in, claim against, and/or property and contractual rights of any kind affording a source of influence over the enterprise." After the government outlined the plea agreement, the district court examined Reckmeyer for the purpose of determining that the plea was voluntary and informed.[4] Responding to the court's inquiry, Reckmeyer stated that he was thirty-three years old, had completed three years of college, had not taken medication within the previous twenty-four hours and was not under the care of a psychiatrist. The court questioned Reckmeyer with respect to his counsel, and Reckmeyer stated that he was satisfied with his counsel and had had sufficient time to discuss the case, including the government's burden of proof. The court then outlined the elements of the offenses to which Reckmeyer was pleading and asked if he understood those elements to which he replied affirmatively.[5]

3. Fed.R.Crim.P. 11(c) provides:

(c) **Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term; and

(2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) that if his plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading

guilty or nolo contendere he waives the right to a trial; and

(5) if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which he has pleaded, that his answers may later be used against him in a prosecution for perjury or false statement.

4. Before questioning Reckmeyer, the court informed him that untruthful answers would subject him to additional charges of perjury, that if he did not understand a question, the court would rephrase it, and that he was free to consult with his lawyers before responding to a question.

5. Because of the importance of this portion of the proceedings to a determination of whether the district court complied with Fed.R.Crim.P. 11(c)(1), we set forth here that portion of the district court's colloquy with Reckmeyer:

Q Have you discussed the nature and elements of these offenses that the Government has to prove in order to convict you in this case?

A Yes, sir, we have.

Q Have you received a copy of the indictment?

The court informed Reckmeyer of his right to a jury trial, his right to plead not guilty, the presumption of his innocence at any trial, and the burden of proof on the government to prove his guilt beyond a reasonable doubt. Reckmeyer indicated that he understood these rights. The government then recited the facts that it would prove were the case to go to trial. The government stated that Reckmeyer "was the leader and supervisor of a drug organization responsible for the distribution of more than 169 tons of marijuana and more than ten tons of hashish on more than 50 occasions...." In addition, it stated that Reckmeyer was the "organizer, supervisor, and manager of the more than 20 drug employees" with whom he worked in concert and that he realized $13.7 million in profits from the drug operations, his only substantial income during the period.

Having told Reckmeyer to listen carefully to the statement of the available evidence, the court upon completion of the government's presentation allowed Reckmeyer the opportunity to dispute the represented facts. Reckmeyer's attorney, while conceding that there was a factual basis for each count to which he was pleading, stated that Reckmeyer "disputes a number, in fact a great number of the specific facts that have just been set forth in the government's statements of facts." The court then inquired directly of Reckmeyer as to the specifics of his disagreement with the government's statement of the evidence:

Q What Ms. Tandy [assistant United States attorney] and then Mr. Reed [Reckmeyer's counsel] has said, do you agree that's what you did in this case?

A I just want to be on the record, your Honor, to agree with Mr. Reed that the facts as stated are not the full facts to my knowledge.

Q Well, so I understand, what you're disputing is some of the amounts of money involved and the amounts of drugs by weight and what have you; is that basically it?

A And some of the episodes and how they happened or didn't happen.

Q But you agree that you were involved in a criminal enterprise, is that correct?

A I do agree that I was involved in a continuing criminal enterprise.

Q Do you agree as to Count 26 that you didn't file, that you filed a false income tax return on Count 26?

A I am pleading guilty to Count 26.

Q Do you have any factual dispute with that one [Count 26]? Is it primarily Count 2 [the CCE charge] that you're disputing?

A I'm disputing almost every single fact as stated in their facts.

A Yes, sir, I have.
Q Do you understand the charges against you as to Counts 2, 26, and 30?
A Yes, sir, I do.
Q Do you understand that Count 2 charges you that in 1974 and continuing up to and including the return of the indictment, which is on January 9, 1985, that you, along with your brother Robert Reckmeyer, and Bruce Thomason did willfully engage in a continuing criminal enterprise in that you, along with Mr. Thomason and your brother Robert Reckmeyer, did willfully and unlawfully in violation of Title 21, U.S.Code, 841(A)(1), including violations that are alleged in Counts 3, 4, 5, 6, 7, 8, 9, and 10, 11 and 12 of the indictment, and that you had a continuing enterprise for violation of the Comprehensive Drug Abuse Control Act of 1970, 21, U.S.Code, 801, that was undertaken by your [sic], your brother, and Bruce Thomason in concert with at least five other persons, and that you occupied, along with Robert Reckmeyer and Bruce Thomason, a position of organizer, supervisor, and manager of a continuing series of violations from which you obtained substantial income and profit and resources.
Do you understand that charge against you, Count 2?
A Can I—
Q Yes, sir, go ahead and talk to your lawyer. Do you understand the charge in Count 2?
A Yes, sir, I do, your Honor.
Q You've gone over this indictment with your counsel prior to coming here this afternoon?
A Yes, sir, I have.
Q Do you understand that count carries a minimum of ten years in jail to life imprisonment, a fine of up to $100,000 or both, and forfeiture [sic] of all profit and interest in the enterprise? Do you understand that?
A Yes, sir, I do.

Q Well, you say you're disputing every single fact, are you telling me you didn't do these things?

A I'm saying I have a different version of the facts as I know them, your Honor.

The district court then summarized the represented facts underlying Count 26, a false tax return charge, and Reckmeyer admitted those facts. The court similarly described the represented factual basis for Count 30, also a false tax return charge, to which under the plea agreement Reckmeyer was to plead guilty. Reckmeyer expressed disagreement with the facts as stated for Count 30 and asked for permission to speak with his counsel. After a recess, Reckmeyer stated that he would plead guilty instead to Count 31—another false income tax count. He was permitted to make that change and to withdraw the guilty plea to Count 30. The court informed him of the elements of Count 31

and advised him to listen carefully to the government's proffer. After the government's recital of facts supporting Reckmeyer's indictment on Count 31 and after Reckmeyer's consultation with counsel, he admitted those facts. The court returned to Count 26 and repeated the factual basis of that count with which Reckmeyer agreed.

The court then provided him an opportunity to raise additional objections to the evidence underlying Count 2. Reckmeyer disagreed with the amounts of hashish and marijuana specified by the government, and the amount of profits which he allegedly earned.[6]

The district court ascertained that Reckmeyer had operated a complex, albeit illegal, enterprise over a ten year period, earning profits of at least three million dollars. It also ascertained that the de-

---

**6.** The court and the defendant engaged in an exchange which included the following:

Q On Count 2, do you agree that you were involved in a criminal enterprise for the distribution and possession with intent to distribute the marijuana and hashish?

A That's correct, your Honor.

Q What is your factual dispute with what she said as to the dates or times or amounts or what?

A Specifically the amounts.

. . . . .

I agree with the facts in general. There are a few specifics in the way the facts came down that I would disagree with.

. . . . .

The deals as stated on page 5 through 9 are in general correct. I would disagree with some of the specific dates, amounts of money, and amounts of marijuana.

Q Tell me what dates and amounts of money, what you're disputing. Tell me what page you're disputing.

A On page 5, the amount of 169 tons of marijuana.

Q What do you say the amount was? Can you be specific or do you know?

A I don't know right now at this time, your Honor.

Q You think it's something less than 169 tons?

A Yes, sir.

Q But you admit that's what you did on the day that they say you did?

A Between 1972 and 1983 I was involved with the distribution of many tons of marijuana.

Q You're just not sure it was 169 tons. Is that what you're basically saying?

A Yes, sir, that's correct, your Honor.

Q Go ahead. Next item you dispute.

A The same with 10 tons of hashish. Though it was tons of hashish, I don't know how many right now. It's hard to remember back to '72 right at this minute.

Q All right, sir.

A Excess of 100 million dollars, I would have to disagree with that statement, though it was millions of dollars.

Q Can you give me any ballpark figure?

A Maybe one-third of that.

Q All right, go ahead.

Reckmeyer then disagreed with the government's representation that he traded gemstones, gold, jewelry and oriental rugs for drugs. He also was not certain of the amount of marijuana purchased from four named individuals in either 1980 or 1981.

After Reckmeyer's attorney stated that Reckmeyer and he would submit a more detailed estimate of gross receipts, the district court addressed Reckmeyer:

Q Are there any other additions or corrections you want to make to the factual statement that's been stated by the Government here?

A No. I just appreciate your indulgence in going over these items.

Q This is important to you and important to the Government, Mr. Reckmeyer. My time doesn't mean anything as far as this is concerned. You can take as much time as you want.

fendant had attended college for three years. During the course of the proceeding, Reckmeyer demonstrated his astuteness and his knowledge of the indictment. He corrected the government as to facts, and effected a change in one count to which he pled guilty. The court gave him every opportunity to ask questions, to consult with counsel, and to withdraw his plea. The proceeding lasted approximately one hour and twenty minutes.

Our task is to determine whether the court's inquiry was sufficient within the context of those circumstances. The purpose of the Rule 11 requirement "is 'to assure that the accused be not misled as to the nature of the offense with which he stands charged.' There is no simple or mechanical rule as to how the court is to determine defendant's understanding of the charge." 1 C. Wright, *Federal Practice and Procedure, Crim.2d*, § 173, at 587 & nn. 7–8 (1982) (quoting *Smith v. United States*, 324 F.2d 436, 439 (D.C.Cir.1963), *cert. denied*, 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1964)). The purpose of the rule is not, however, to lay a procedural trap for the government and allow a defendant to change his mind after the Rule 11 hearing and challenge a plea on a technicality. The advisory committee notes to Rule 11 state that "the method by which the defendant's understanding of the nature of the charge is determined may vary from case to case, depending on the complexity of the circumstances and the particular defendant."

■ The manner of ensuring that the defendant is properly informed is committed to the good judgment of the district court, to its calculation of the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence. *United States v. Dayton*, 604 F.2d 931, 938 & n. 11 (5th Cir.1979) (en banc), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). We agree with the analysis of the Fifth Circuit when it said of Rule 11:

The rule is now at such a level of complexity as to render letter-perfect compliance with each of its many provisions very difficult indeed. One who has pled guilty and done so voluntarily, understandingly, and with knowledge of the consequences of his plea—as the strict compliance with *McCarthy [v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)] that we today require ensures—has evinced a desire to waive technicalities, to come to terms with the legal system, and to admit his fault. There is something foreign to the spirit of this act, almost invariably done today on the advice of counsel, in a rule that encourages following it by an appeal grounded in a mincing insistance on the punctilios of Rule 11.

*Id.* at 939–40.

Under this rationale, Reckmeyer had more than adequate understanding of the CCE charge and the range of possible penalties. The court also adequately explained the forfeiture resulting from the CCE conviction. Reckmeyer contends that the court should have informed him specifically that the government had the burden of proving that a particular asset was forfeitable under 21 U.S.C. § 853(a) and that he would have been entitled to a special jury verdict as to each asset to be forfeited. We disagree. The court made it clear to Reckmeyer that the effect of his plea would be to require the forfeiture of all of his assets. At three points in the proceedings, the court informed him of the forfeiture consequence to a guilty plea and asked if he understood that consequence. Reckmeyer indicated that he did. Furthermore, the district court's inquiry into Reckmeyer's awareness of the forfeiture penalty followed the reading of the plea bargain which stated in part:

It is further a condition of this plea agreement that the defendant must fully assist the United States in the recovery and return to the United States of any drug-related assets, either domestic or foreign, which have been acquired either indirectly or directly through the unlawful activities of his co-defendants, co-conspirators, or other drug traffickers.

The defendant further understands that it is a part of this plea agreement that he must prevent the disbursement of any moneys, property, or assets derived from any unlawful drug-related activities, if said disbursements are within his direct or indirect interest or control.

It is a further part of this plea agreement that in addition to the assets listed in Count 2, Paragraph B, the defendant must immediately and voluntarily forfeit to the United States all other domestic and foreign assets in which he has any direct or indirect interest or control, which are the proceeds of unlawful drug activities or are directly or indirectly related to unlawful drug activities.

Reckmeyer stated in open court that he had read and understood the indictment. We evaluate his understanding in the context of his background and his demonstrated intellectual and organizational capabilities. We also consider the manner in which Reckmeyer showed a complete understanding of the plea bargain and the government's case. There can be no doubt that after the district court's inquiries and the reading of the plea agreement, Reckmeyer understood the forfeiture consequences of his plea.

Reckmeyer also asserts that the district court failed to establish on the record a factual basis for the forfeiture of his assets. He contends that the court should have ensured a factual basis for the forfeiture of each particular asset. It is true that Fed.R.Crim.P. 11(f) requires the district court to inquire beyond the agreement to determine if there is a factual basis for the forfeiture of the assets. We agree with the reasoning of the Seventh Circuit in *United States v. Roberts* that "[t]he mere fact that the defendant has agreed an item is forfeitable in a plea agreement, does not make it so...." 749 F.2d 404, 409 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1770, 84 L.Ed.2d 830 (1985).

We think, however, that the Rule 11 proceeding here established a sufficient factual basis for the forfeiture. The plea agreement stated that Reckmeyer had insignificant legitimate income during the decade of his drug operations. In its statement of facts, the government repeated that at trial it would have shown that Reckmeyer had insignificant legitimate income from 1974 through January, 1985. Although Reckmeyer stated that his actual profits were only one-third that of the government's estimate, he did not seriously dispute that his only significant source of income was drug related. Furthermore, the forfeiture pled in the indictment exempted relatively small possessions, i.e., items having a retail value of less than $1,000 located at the Reckmeyers' residence. These are the only items which Reckmeyer arguably might have purchased with any legitimate income he might have received. Because Reckmeyer's legitimate income was insignificant, there was more than sufficient factual basis for forfeiture of the forty-one items specified in the indictment and included in the plea agreement by reference to the indictment. Those items included a 675-acre estate in Loudoun County, Virginia, various other real property holdings, promissory notes, automobiles and interest in numerous bank accounts. Reckmeyer did not seriously dispute the allegations that he had insignificant legitimate income, and thus could not have acquired these forfeitable assets with legitimate income. In sum, the district court adequately complied with Rule 11(f).

## II.

■ Finally, Reckmeyer's second contention is that the government breached the plea bargain agreement and that the district court erred in not permitting him to withdraw his plea as a result of such a breach.[7] He argues that the government

---

7. The relevant portion of the agreement is:

It is a further part of this plea agreement that the defendant must fully and truthfully cooperate with the United States Government in its investigation of the importation and distribution of controlled substances and related unlawful activities. This cooperation is to include, but is not limited to, truthful and complete debriefings of Mr. RECKMEYER's knowledge concerning unlawful drug activi-

**1223**

violated the provision assuring against the use of anything which he had said to law enforcement agents, government attorneys, grand juries or at any trial; it did so by providing the probation office with information that he had given the government about his drug activities which had continued during the period he was under investigation. Based on this information, the probation officer reported to the district court that Reckmeyer had purchased 21,000 pounds of high-grade marijuana in late 1984, and had placed an additional order for 100,000 pounds to be delivered during the fall of 1985. The government concedes that it obtained this information from Reckmeyer during his debriefing.

Reckmeyer is entitled to the enforcement of the agreement which he entered into with the government and which was the inducement to his guilty plea. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). *See Cooper v. United States*, 594 F.2d 12, 15–17 (4th Cir.1979); *United States v. Cook*, 668 F.2d 317, 319–21 (7th Cir.1982) (citing *United States v. Bowler*, 585 F.2d 851, 856 (7th Cir.1978) ). *See also Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). We must determine, therefore, the scope of the government's agreement not to use against Reckmeyer information which he provided.

The government contends on appeal, as it did before the district court, that the agreement did not limit its ability to bring to the attention of the court relevant information regarding the defendant, including information which it obtained directly from Reckmeyer. It contends that the plea agreement, read as a whole, restricted its ability to use Reckmeyer's statements in any subsequent criminal prosecution, but that in view of the specific reservation in the agreement of the right to allocute at the time of sentencing, the agreement did not prevent the government from providing the probation office with relevant information. *See supra* note 7. The government also asserts that it was free to provide the information to the parole officer because it had a duty to provide the sentencing court with complete and accurate information concerning the defendant to enable the court to impose an appropriate sentence. *United States v. Block*, 660 F.2d 1086, 1091 (5th Cir.1981), *cert. denied*, 456 U.S. 907, 102 S.Ct. 1753, 72 L.Ed.2d 164 (1982).

We dispense with this latter argument first. The government, of course, does not have the right to make an agreement to withhold relevant factual information from the court.[8] *Id.* at 1091–92; American Bar Association Standards Relating to the Administration of Criminal Justice, § 3–6.2 (1980) (prosecutor should assist court in basing its sentence on complete and accurate information for use in the presentence report; prosecutor should disclose any information in the prosecutor's file relevant to the sentence). It is equally clear, however, that the government cannot properly enter into such an agreement with an unsuspecting defendant and then seek judicial relief from its promise on the basis of its impropriety. A government prosecutor's specific duties of fairness to a defendant

---

ties and related unlawful activities. In this connection, Mr. RECKMEYER understands that he must fully disclose and provide information to the Government including any books, papers or documents that are of evidentiary value to the Government's investigations. The defendant also must testify fully and truthfully before any grand juries and at any trials at which the Government determines his testimony may be relevant. It is a further part of this plea agreement that the Government agrees not to use against the defendant anything he says to law enforcement agents, government attorneys, to any grand juries or at any trial unless he should make false statements or commit perjury. During debriefings of the defendant his counsel may be present.

. . . . .

It is a part of this agreement that the Government reserves its right to fully allocute at the time of sentencing.

8. The district court, citing *Block*, denied Reckmeyer's motion to strike the information from the presentence report because of the government's obligation to present relevant information to the court.

and scrupulous honesty in dealing with court would simply require that such an improper plea bargain be voided.[9]

We are, however, persuaded by the government's argument that it did not agree to withhold the information furnished by Reckmeyer from the sentencing court. It contends that the agreement "not to use ... [such information] against him" was an agreement not to use it in other prosecutions. The government's reservation in the agreement of the right to allocute at sentencing supports this contention, as does contemporaneous correspondence concerning this provision. Several days prior to sentencing, but after Reckmeyer indicated an intention to withdraw his guilty plea on the basis of alleged Rule 11 violations, Reckmeyer's counsel wrote the assistant United States attorney:

> This is to confirm our conversations this afternoon. You have advised me that the Government takes the position that any statements that Chris makes during the course of any debriefing during the cooperation phase of his Plea Agreement cannot be used against him in any criminal case with the following: (1) exception that he may be prosecuted for perjury or false statement with respect to any such statements, and (2) that any such statements may be used against Chris as impeachment or rebuttal if his plea is withdrawn or vacated for any reason and he subsequently testifies on his own behalf in this case.

> We do not agree with the latter position and take the position that the Government may not use the statements that Chris makes against him in any way except in a prosecution for perjury or

false statement. I note that your position with respect to the use of Chris' statements for impeachment or rebuttal has been made known to me only today.

The agreement also provided that the government would advise the district court of Reckmeyer's cooperation with the government's investigation of related drug activities. This obligation is consistent with the government's construction of the plea agreement. Advising the court would necessarily involve informing the court of the substance of the defendant's statements in debriefing.

Reckmeyer relies heavily upon the decision of the Seventh Circuit in *United States v. Cook*, 668 F.2d 317 (7th Cir.1982). We do not find the rationale underlying the decision in *Cook* dispositive here because of the difference between the plea agreement in *Cook* and the one between the government and Reckmeyer in the instant case. In *Cook*, the government agreed to "make no recommendation whatsoever as to any possible punishment" and "to not offer anything at all in aggravation." 668 F.2d at 318. In that case it violated its promise, and the Seventh Circuit held that, regardless of whether the government should have ever made such a promise, the defendant was entitled to plead anew. *Id.* at 319–20. In the instant case, the promise not to use Reckmeyer's statements related to possible future prosecutions, not to the sentencing procedures which gave effect to the very guilty plea into which Reckmeyer had entered.

In view of the above, the judgment of the district court is affirmed.

AFFIRMED.

**9.** The government asserts for the first time on appeal that even if it breached the agreement, Reckmeyer first breached it by lying during the debriefing and by attempting to distort the results of his polygraph examination. Without reaching the merits of this contention, we note that it was for the district court to determine whether the defendant breached the agreement—and not for the government to make a unilateral determination and then proceed to fashion its own remedy. *See United States v. Simmons*, 537 F.2d 1260, 1261 (4th Cir.1976)

(manifest impropriety in permitting the government, without satisfying a judge that the evidence proves that a defendant broke his promise, to escape from the obligation the government undertook in the plea bargain). We, therefore, do not consider this argument as a basis for sustaining the government's position on appeal.

We also note that the government could have avoided confusion over the plea agreement's meaning by more careful craftsmanship in the agreement.