**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Pasquale MALVITO, Defendant– Appellant.**

**No. 90–5822.**

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1991.

Decided Oct. 16, 1991.

Joseph Jeffrey Harris, Morgantown, W.Va., argued, for defendant-appellant.

John H. Reed, Asst. U.S. Atty., Wheeling, W.Va., argued (William A. Kolibash, U.S. Atty., on brief), for plaintiff-appellee.

Before HALL, MURNAGHAN and WILKINS, Circuit Judges.

OPINION

K.K. HALL, Circuit Judge:

After making a plea agreement with the government, Pasquale Malvito pleaded guilty to possession of cocaine with intent to distribute. He appeals the sentence imposed by the district court. We vacate and remand for resentencing.

I.

In September, 1988, Malvito sold cocaine to an informant in Morgantown, West Virginia. A later search of his residence turned up 227 grams of cocaine and $5,000 in cash. He agreed to plead guilty and to cooperate with the government by providing testimony, information, and undercover assistance. The plea agreement stated that evidence obtained from Malvito would not be used against him in any further criminal proceedings, and that, if he cooperated, the government would recommend a

sentence at the low end of the guideline range, a reduction for acceptance of responsibility, and a downward departure for substantial assistance.

Confident in these promises, Malvito was extraordinarily cooperative. He provided information and grand jury testimony that assisted in the conviction of three individuals, including a major drug dealer in the Baltimore/Washington area. His cooperation was matched by his frankness. During his debriefing, he admitted selling about 400 pounds of marijuana per year since 1984. The presentence report noted that this information would not be used to calculate the base offense level because it was not known to the government before Malvito's cooperation. U.S.S.G. § 1B1.8(b)(1) (Nov. 1989).

The presentence report contained a statement from the government, in accordance with its plea agreement promise, recommending a sentence at the low end of the guideline range, a reduction for acceptance of responsibility, and a downward departure of two offense levels for substantial assistance.

At sentencing, the government's attorney failed to orally renew the recommendation that Malvito be sentenced at the low end of the guideline range, though she made the substantial assistance and acceptance of responsibility recommendations.

The district court gave Malvito the acceptance of responsibility reduction. However, because of Malvito's admission of involvement in heavy marijuana trafficking, the court refused to downwardly depart for substantial assistance. The court then sentenced Malvito to the top (33 months) of the resulting guidelines range (offense level 18, criminal history category I—27–33 months). Had the district court followed all of the government's recommendations, Malvito would have been sentenced to 21 months (level 16, category I—21–27 months).

Malvito appeals.

## II.

■ At the time Malvito was sentenced, U.S.S.G. § 1B1.8(a) (Nov. 1989) provided:

Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and the government agrees that self-incriminating information so provided will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

Application Note 1 to this section explains:

Although this guideline, consistent with the general structure of these guidelines, affects only the determination of the guideline range, the policy of the Commission is that where a defendant as a result of a cooperation agreement with the government to assist in the investigation or prosecution of other offenders reveals information that implicates him in unlawful conduct not already known to the government, such defendant should not be subject to an increased sentence by virtue of that cooperation where the government agreed that the information revealed would not be used for such purpose.

The government does not dispute that Malvito provided notably "substantial assistance." Moreover, an application note to the substantial assistance policy statement states, "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." U.S.S.G. § 5K1.1, comment. (n. 3) (Nov. 1989). However, the district court in this case did not refuse to depart because it disbelieved the government's evaluation that Malvito substantially assisted. It simply refused to reduce the sentence any further because of the debriefing admission of marijuana trafficking:

The marijuana ... was not made a part of this criminal action and it involves only the cocaine. But the Court needs to certainly keep that in mind as we think of the total picture here and as we think of not just the charged offense, but the real offense that involved this individual.

In looking at the totality of this individual's involvement with controlled substance, and not the least appreciative to him for his participation as represented by the Government in these three cases that have been mentioned here this morning, the Court does not believe that in either the spirit of the Congressional enactment or in the spirit of the Sentencing Commission's Guidelines, that we could give an application here to a 5K1.1 reduction of sentence for substantial assistance. He has assisted and this certainly is appreciated and worthwhile, but the Court does not believe that it can make the further reduction, though.

In a nutshell, the district court (i) considered self-incriminating information provided by the defendant under an express governmental promise not to use it against him in order to (ii) resolve a factual issue (substantial assistance) to which the information was completely irrelevant. Indeed, the court's "appreciation" of Malvito's "worthwhile" assistance all but finds as fact that Malvito did substantially assist.

We think there is no question that, contrary to the guidelines' expressed policy, Malvito has been "subject[ed] to an increased sentence by virtue of [his] cooperation where the government agreed that the information revealed would not be used for such purpose." Were we to allow Malvito's sentence to stand, not only would this policy be frustrated, but an important and common investigative tool would lose some potency. Unless a defendant can feel secure in the government's promise of "sentencing immunity," he faces a Hobson's choice between losing a "substantial assistance" departure by (i) telling so much that the district court denies the departure because of the information he reveals and (ii) telling too little, being caught in it, and losing the government's recommendation.

We will not endorse this pointless dilemma. The government is entitled to promise that it will not use information gained under a cooperation agreement against the defendant, and the defendant is entitled to trust in the promise. The district court is not bound by the government's recommendation that it make a substantial assistance departure. On the other hand, U.S.S.G. § 1B1.8 requires it to honor the government's promise that self-incriminating information volunteered by the defendant under a cooperation agreement will not subject the defendant to a harsher sentence. In short, the district court could have denied Malvito the downward departure for almost any reason, but not for the reason it gave.

■ Refusals to downwardly depart are ordinarily not appealable. *United States v. Bayerle*, 898 F.2d 28, 30–31 (4th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990). However, because the sentence "was imposed as a result of an incorrect application of the sentencing guidelines," 18 U.S.C. § 3742(a)(2), this appeal falls within one of the narrow circumstances in which review is authorized by Congress.

We vacate and remand for resentencing.[*]

VACATED AND REMANDED FOR RESENTENCING.

WILKINS, Circuit Judge, dissenting:

Malvito was sentenced within his correctly calculated sentencing guideline range; yet, the majority finds that Malvito may appeal his sentence "as a result of an incorrect application of the sentencing guidelines." 18 U.S.C.A. § 3742(a)(2) (West Supp.1991). I do not agree with the conclusion that the guidelines were incorrectly applied by the district court. The district court decided that even though Malvito's assistance was substantial, nevertheless a sentence below the guideline range was inappropriate when viewed in the context of Malvito's admitted, large-scale drug trafficking extending over more than a

---

[*] Malvito also contends that the government breached the plea agreement when the prosecutor failed to orally renew the government's previous written recommendation (incorporated in the presentence report) that Malvito be sentenced at the low end of the guideline range. Because resentencing is required, the government will be given another opportunity to comply; therefore, we need not resolve this issue at this time.

four-year period. Nothing in section 1B1.8 or its commentary precludes a court from using defendant-provided information to refuse a downward departure, and nothing in section 5K1.1 *mandates* a court to grant a government motion to depart based on a defendant's substantial assistance. I, therefore, respectfully dissent.

## I.

Section 1B1.8 directs that self-incriminating information disclosed by a defendant pursuant to an agreement to cooperate by providing information to the government concerning the unlawful activities of others may not be used in determining the defendant's guideline range. U.S.S.G. § 1B1.8(a). Importantly, the language of section 1B1.8 only states that incriminating information given pursuant to an agreement to cooperate "shall not be used in determining the *applicable guideline range.*" (Emphasis added.) This section does not impact other sentencing issue decisions, for example, at what point in the applicable guideline range to impose sentence or whether to depart from the guideline range.

Apparently recognizing that the guidelines per se were not applied improperly, as the district court did not consider the self-incriminating information Malvito provided in calculating the guideline range, the majority relies on a sentence in an application note to this section that states:

> Although this guideline, consistent with the general structure of these guidelines, affects only the determination of the guideline range, the policy of the Commission is that where a defendant as a result of a cooperation agreement with the government to assist in the investigation or prosecution of other offenders reveals information that implicates him in unlawful conduct not already known to the government, such *defendant should not be subject to an increased sentence by virtue of that cooperation* where the government agreed that the information revealed would not be used for such purpose.

U.S.S.G. § 1B1.8, comment. (n.1) (emphasis added). The majority finds that by basing its decision not to depart downward from the applicable sentencing guideline range on the self-incriminating information Malvito provided, the district court subjected Malvito to an increased sentence. While, from a policy standpoint, one could argue the merits of the result reached by the majority, greater countervailing policy considerations and careful analysis of section 1B1.8 lead me to conclude that the result does not stand on solid ground. In order to reach the proper interpretation of the language that the "defendant should not be subject to an increased sentence by virtue of that cooperation," it must be read in context. By focusing on this single sentence of commentary in isolation, the majority has adopted an interpretation that does not coincide with the purpose of section 1B1.8 and is internally inconsistent with application note one as a whole.

After a motion has been made by the government notifying the district court of a defendant's substantial assistance, the sentencing judge "*may* depart from the guidelines." U.S.S.G. § 5K1.1 (emphasis added). While a substantial assistance motion places a defendant in the posture to be sentenced below the applicable guideline range, no *entitlement* to leniency is acquired—not even when it is conceded by all, including the district court, that the defendant substantially assisted the government. The decision to depart for substantial assistance and the extent of the departure, if any, rests solely within the discretion of the district judge, limited only by the admonition that certain prohibited factors, such as race or national origin, may play no role in the sentencing decision. A defendant agrees to cooperate in an attempt to gain a substantial assistance motion in the hope that the sentencing judge will be lenient. But, it is only a possibility without any guarantee.

It is the fundamental difference in the discretion of the district court and a defendant's entitlement to a sentence reduction that distinguishes adjustments to the offense level from departures. For example, a defendant is entitled to downward adjust-

ment for acceptance of responsibility when the facts support the adjustment, and a denial of this adjustment when the facts dictate its application is error, reviewable by an appellate court under the clearly erroneous standard. *See United States v. Curtis*, 934 F.2d 553, 557 (4th Cir.1991). A defendant, however, is not entitled to a downward departure—just as the government is not entitled to an upward departure. And, the refusal by the district court to grant a departure is not appealable. *United States v. Bayerle*, 898 F.2d 28, 30–31 (4th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990). Because a downward departure rests at all times in the discretion of the district court, a defendant is not subjected to an "increased sentence" by virtue of a decision of the district court to deny the departure.

The purpose of section 1B1.8 is to insulate a defendant, cooperating pursuant to agreement, from having his offense level increased under the relevant conduct provisions of U.S.S.G. § 1B1.3 as a result of information provided to the government about the misconduct of others that also implicates him. Obviously, the prohibition contained in section 1B1.8 against using such self-incriminating information to calculate the guideline range would be of little value to a defendant if a district court could nevertheless rely on the same information as a basis for an upward departure from the guideline range. Read in context, the language of the application note attempts to signal that because the incriminating information given pursuant to an agreement to cooperate cannot be used to increase the offense level, the sentencing court should not, as a matter of policy, accomplish by upward departure that which it could not have done directly and to signal that an upward departure on this basis might well be unreasonable, *see* 18 U.S.C.A. § 3742(e)(3) (West Supp.1991).

The interpretation adopted by the majority of the "increased sentence" language in the application note renders other portions of the application note virtually meaningless. The first sentence of the application note states that "[t]his provision does not authorize the government to withhold in-formation from the court but provides that selfincriminating information obtained under a cooperation agreement is not to be used to determine the defendant's guideline range." U.S.S.G. § 1B1.8, comment. (n.1). The note then goes on to express the Sentencing Commission policy that such incriminating information also should not be used by the court to increase the sentence. But if, as the majority asserts, the policy statement by the Sentencing Commission is to be construed to mean that such information also may not be the basis to decline to reduce a sentence, then one must logically wonder what use, if any, the court may permissibly make of the information the Sentencing Commission emphasized was not to be withheld. Under the construction endorsed by the majority, this instruction to the government would be a hollow admonition under which the judge presumably would be entitled to know the extent of a defendant's admitted involvement in other criminal activity but precluded from considering that information in any way.

## II.

Another troubling aspect of the majority opinion is the implication from its statement that: "The government is entitled to promise that it will not use information gained under a cooperation agreement against the defendant...." To the extent that this statement means that the government may agree to make, or refrain from making, a sentencing recommendation, it is a correct statement. As standard practice the government may enter into a plea agreement under which a sentencing recommendation to the court is non-binding. *See* Fed.R.Crim.P. 11(e)(2). Additionally, under U.S.S.G. § 1B1.8 the government may enter into an agreement under which self-incriminating information supplied by the defendant will not be used to calculate the defendant's guideline range. If a defendant seeks to plead guilty under an agreement which contains a specific sentence, or under which charges will be dropped, the court must accept the agreement before it is bound by the contents. *Id.*

The government, however, has no "right to make an agreement to withhold relevant factual information from the court." *United States v. Reckmeyer,* 786 F.2d 1216, 1223 (4th Cir.), *cert. denied,* 479 U.S. 850, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986); *see* U.S.S.G. § 1B1.8, comment. (n.1). Indeed, it has an affirmative "duty to bring all relevant information about [a defendant] to the court's attention at the time of sentencing." *United States v. Perrera,* 842 F.2d 73, 75 (4th Cir.), *cert. denied,* 488 U.S. 837, 109 S.Ct. 102, 102 L.Ed.2d 77 (1988). Of course, the government has never possessed, nor does it possess under the sentencing guidelines, the unilateral authority to bind the statutory sentencing discretion of district courts. *Cf. Reckmeyer,* 786 F.2d at 1223–24; U.S.S.G. § 6B1.4.

I do not read Malvito's plea agreement as an attempt by the government to prevent the court from considering the self incriminating information for sentencing purposes. The government agreed that "[n]othing contained in any statement or any testimony given ... will be used against you in any further criminal proceedings." This court has previously construed a cooperation agreement under which the government reserved the right to allocute at sentencing and promised "not to use against the defendant anything" disclosed pursuant to the cooperation agreement. 786 F.2d at 1223 n. 7. We interpreted this language as a representation by the government not to prosecute the defendant for misconduct he disclosed but not as a bar to the use of the information at sentencing for the instant offense. *Id.* at 1224. Like the *Reckmeyer* panel, I read the similar language in Malvito's plea agreement, while inartfully drafted, as an agreement not to use the information as a basis for subsequent prosecutions. This construction is reinforced by the subsequent sentences of the pertinent paragraph

of the plea agreement, for they define the circumstances under which Malvito may be prosecuted "further." For example, the agreement provides that the government could prosecute Malvito based on the same information if the information were obtained from independent sources or for misconduct, such as perjury, that might be committed in the future. Consequently, I would find that the government did not promise that self-incriminating information provided by Malvito could not be considered at a sentencing proceeding dealing with the instant offense for which Malvito pled guilty.

### III.

In sum, section 1B1.8 prohibits the use of self-incriminating information disclosed pursuant to a cooperation agreement only in calculating the defendant's guideline range. No doubt Malvito hoped that his cooperation would result in leniency, but he was never entitled to a downward departure. And, the refusal by the district court to depart downward did not subject Malvito to an increased sentence. Properly construed, the application note accompanying this guideline is a policy statement expressing the intent of the Sentencing Commission that district courts should refrain from doing indirectly that which they cannot do directly, *i.e.,* depart upward from a defendant's guideline range based on information disclosed pursuant to a cooperation agreement. The guidelines were applied correctly, and the refusal to depart is not appealable. I would affirm.*

---

\* Malvito contends that the government breached its plea agreement by failing during the sentencing colloquy to request that the district court impose a sentence at the low end of the guideline range. While the better practice undoubtedly is for the government to bring each recommendation to the attention of the district court at sentencing, because the district court had before it the plea agreement incorporating the recommendation and specifically referenced the paragraph of the presentence report that included this provision of the agreement, the record is clear that the district court was aware of the recommendation. Consequently, any error by the government, if one was committed, was harmless.